**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

LAYTON LESTER,

    Plaintiff,

v.

GEORGIA DEPARTMENT OF
CORRECTIONS; CAPTAIN MOBLEY;
OFFICER C. WILLIAMS; and OFFICER
HILL,

    Defendants.

CIVIL ACTION NO.: 6:15-cv-110

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Georgia State Prison in Reidsville, Georgia, submitted a Complaint in the above captioned action pursuant to 42 U.S.C. § 1983. (Doc. 1.) The Court has conducted the requisite frivolity review of this Complaint. For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against the Georgia Department of Corrections, Captain Mobley, and Officer Hill. Additionally, I **RECOMMEND** the Court **DISMISS** Plaintiff's official capacity claims, supervisory liability claims, and his claims for excessive use of force. However, Plaintiff's arguably sets forth plausible claims that Defendant Officer C. Williams disregarded Plaintiff's serious medical needs and disregarded a substantial risk to Plaintiff's health and safety. Accordingly, these claims will proceed, and the Court **DIRECTS** the United States Marshal to serve Defendant C. Williams with a copy of the Complaint and this Order. Additionally, the Court provides instructions regarding the future litigation of this case which the parties are urged to read and follow.

## BACKGROUND

Plaintiff filed this action contesting certain conditions of his confinement at Georgia State Prison. Specifically, Plaintiff contends that Defendants violated his rights during an incident on July 9, 2015. (Doc. 1, p. 6.) On that date, Plaintiff returned to his cell from his shower and placed his hands in the tray flap of his cell so that the officer could remove Plaintiff's handcuffs. Id. However, after the removal of the handcuffs, Plaintiff refused to move his hands in order to prevent the officer from being able to secure the tray flap. Id. Then, Plaintiff threw three cups of feces into the dorm area. Id. Plaintiff's roommate returned from the shower, and Plaintiff again refused to allow officers to secure the tray flap. Id.

Then, due to commotion in the dormitory, more officers were called into the area. Id. Plaintiff pulled up the tray flap "so it [would] look secure." Id. However, Defendant Correctional Officer Williams noticed that the tray flap was unsecured and tried to secure it. Id. However, before Williams could do so, Plaintiff again stuck his hand through the tray flap to prevent it from being secured. Id. Defendant Williams tried to secure the tray flap while Plaintiff's arm was in the tray flap but was unsuccessful, and Defendant Captain Mobley told Defendant Williams to stop. Id. Another correctional officer, Officer Burke, then came to Plaintiff's tray flap, and Plaintiff "tried to snatch his mace." Id.

Another officer, Lieutenant Johnson, was then able to secure the tray flap in the open position. Johnson then talked to Plaintiff, and Plaintiff relayed that he had a problem with ants in his cell and needed the cell to be sprayed for bugs. Id. Defendant Captain Mobley then interrupted the conversation and stated that Plaintiff and his roommate were not eating until Defendant Mobley said they could. Id. Plaintiff told Defendant Mobley that if he and his roommate were not fed, they would "tear up the cell." Id.

After Plaintiff's roommate did not receive his lunch tray, Plaintiff and his roommate "started tearing up the cell." Id. Then, Plaintiff and his roommate set a fire in the cell. Id. One officer poured water at the bottom of the cell door, but there was fire at the top of the door. Id. Defendants Williams and Hill and another officer were outside the cell door. Id. These officers sprayed a fire extinguisher though the side of the door. Id. Defendant Hill called out to Plaintiff and his roommate "are yall [sic] ok in there." Id. The officers sprayed the fire extinguisher twice. Id. Plaintiff and his roommate stood at the back of the cell for at least ten minutes until the room was cleared. Id.

Then, "some time later", Plaintiff began to beat on the door of his cell with a pole off of one of the beds, and Unit Manager Chambers came to his cell door. (Id. at pp. 6–7.) Plaintiff explained the incident to Unit Manager Chambers and told him that his roommate had not been fed. (Id. at p. 7.) The Unit Manager relayed that Defendant Mobley stated Plaintiff and his roommate would be fed. Id. During this time, Defendant Officer Williams was "constantly coming to the cell door opening the top flap window stating 'now look at your stupid ass can't even breath [sic],' 'dumb muthafucker [sic],' and laughing." Id. At approximately 6:00 p.m., which was around the time of a shift change, Lieutenant Gottie and Lieutenant Cloud spoke with Plaintiff about the incident. Id. Then they conducted a strip search of Plaintiff and his roommate and moved them to another cell. Id. Plaintiff asked about a medical evaluation, and Defendant Cloud responded "aint [sic] no medical." Id. Plaintiff and his roommate remained in "strip cell", where Plaintiff was clothed in only his boxers and his shower shoes until after 1:30 a.m. Id.

Plaintiff contends that Defendants violated his constitutional rights by slamming his arm in the tray flap, by spraying the fire extinguisher at him, and by failing to obtain the proper

3

medical care for him.  Id.  Plaintiff seeks monetary damages for injuries to his lungs which he alleges he has had since the incident occurred.  Id.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983.  Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress.  Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).  Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances).  Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'"  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

I. **Claims against Georgia Department of Corrections and Defendants in their Official Capacities.**

Plaintiff cannot sustain a Section 1983 claim against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state agency or a state officer in his official capacity is "no different from a suit against the [s]tate itself," such defendants are immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against the Georgia Department of Corrections as well as against Mobley, Williams, and Hill in their official capacities as employees of the Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief, and, therefore, the Court should **DISMISS** all claims against the Georgia Department of Corrections and Defendants in their official capacities.

II. **Supervisory Liability Claims**

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior.[1] Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998).

---

[1] The principle that respondeat superior is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipality, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129–30 (11th Cir. 1992).

A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff attempts to hold Captain Mobley liable based on his direct involvement in the alleged constitutional violation as well as due to his supervisory role. As discussed below, Plaintiff has failed to state a sufficient cause of action that Defendant Mobley was personally involved in the denial of Plaintiff's constitutional rights or that Mobley was otherwise causally connected to any such violation. Furthermore, Plaintiff cannot hold Defendant Mobley, or any other Defendant, liable based on any respondeat superior or supervisory liability theory, and the Court should **DISMISS** any such claim.

### III. Excessive Force Claims

In order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An

7

excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Plaintiff firsts contends that Defendants used excessive force when attempting to close his tray flap while Plaintiff's arm was still inside the flap. As an initial matter, Defendant Hill was not present during this incident, and Plaintiff does not allege that Defendant Mobley tried to close the tray flap. Indeed, Plaintiff asserts that Defendant Mobley told Defendant Williams to stop trying to close the flap. (Doc. 1, p. 6.) Moreover, as Plaintiff's own allegations indisputably point out, Defendant Williams attempted to close the tray flap to restore order and discipline that was disrupted by Plaintiff's own actions. Plaintiff admits that he threw feces through the opening, that he attempted to deceive the officers by making the flap look secured, and that he attempted to grab an officer's mace spray through the flap when the officer tried to

8

secure the flap. (Doc. 1, pp. 6–7.) Thus, by Plaintiff's own admission, the officers had a need to secure the tray flap in order to eliminate a threat to the safety of the officers and the other inmates. Brown v. Smith, 813 F.2d 1187, 1189–90 (11th Cir. 1987) (judgment in favor of an officer who used force against an inmate to accomplish the "legitimate security purpose" of getting the inmate into his cell.). Moreover, Defendant Williams hit Plaintiff's arm with the tray flap because Plaintiff stuck his arm into the opening before the flap could be closed to prevent it from being closed. (Doc. 1, p. 6.) Thus, the flap hit Plaintiff's arm because of Plaintiff's own disorderly and subversive actions. Lastly, Plaintiff does not allege that he suffered any injury due to Defendant Williams' attempt to close the tray flap. Consequently, Plaintiff has failed to plausibly allege that the force used in attempting to close the tray flap was sufficiently serious or that it was used maliciously and sadistically for the very purpose of causing harm rather than a good faith effort to maintain or restore discipline. Thus, the Court should **DISMISS** all excessive force claims based on the closing of the tray flap.

Plaintiff's excessive force claims based on the officers' use of a fire extinguisher should meet the same fate. As an initial matter, Defendant does not argue that Defendant Mobley was present during the use of the fire extinguisher. Moreover, Plaintiff's own allegations reveal that the officers used the fire extinguisher not to cause Plaintiff harm but instead to prevent harm. Again, Plaintiff caused the situation through his own subversive and dangerous actions by starting a fire in his cell. Id. The fire had reached the top of the door to his cell, and pouring water under the cell did not extinguish it. Consequently, there was an unquestionable need to use the fire extinguisher to eliminate a threat to the safety of the officers and the inmates, including Plaintiff. See Burke v. Bowns, No. 1:11-CV-00180-KOB, 2014 WL 4829470, at *18 (N.D. Ala. Sept. 29, 2014) (officer's use of the fire extinguisher to extinguish the fire set by plaintiff, even if

9

a sufficient amount of the fumes entered the plaintiff's cell to affect his lungs and eyes, was clearly a good faith effort to maintain discipline and not a malicious and sadistic act in violation of the plaintiff's Eighth Amendment rights). It is incredulous for Plaintiff to admittedly create such a significant risk to his own safety and then claim that Defendant used excessive force by merely taking steps necessary to eliminate that risk. For all of these reasons, the Court should **DISMISS** Plaintiff's claim for excessive force based on the use of the fire extinguisher.

### IV.  Deliberate Indifference to Plaintiff's Medical Needs and Risks to his Health and Safety

Plaintiff contends that after the officers used the fire extinguisher, he remained in his cell for hours and that he had difficulty breathing during this time due to the fumes from the fire extinguisher. He argues that Defendant Officer Williams was "constantly coming to the cell door opening the top flap window stating 'now look at your stupid ass can't even breath [sic],' 'dumb muthafucker [sic],' and laughing." (Doc. 1, p. 7.) Additionally, he contends that he did not receive any medical treatment during this time and that later Lieutenant Cloud told him that there would be no medical evaluation. Id. Plaintiff alleges that he still suffers from lung problems due to having inhaled the fire extinguisher fumes for a prolonged period.

When construed in Plaintiff's favor, these allegations regarding events after the use of the fire extinguisher arguably set forth a plausible claim that Defendant Williams disregarded Plaintiff's serious medical needs and exercised deliberate indifference to a substantial risk to his health and safety. However, Plaintiff fails to set forth cognizable claims against Defendants Mobley and Hill.

#### A.  Denial of Medical Care

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care."

Farmer, 511 U.S. at 832.  Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted).  Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  The Constitution does not mandate comfortable prisons. Id.  Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." Id. at 347.  However, "[c]ontemporary standards of decency must be brought to bear in determining whether a punishment is cruel and unusual." Bass v. Perrin, 170 F.3d 1312, 1316 (11th Cir. 1999).

In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828.  However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105).  Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference to medical care claim, a prisoner must overcome three obstacles.  The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).  A medical need is serious if it "'has been diagnosed by a physician

as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

Plaintiff sets forth sufficient facts that Defendant Williams knew of Plaintiff's need for medical treatment but disregarded that risk. According to Plaintiff, Defendant Williams constantly came to Plaintiff's cell after the use of the fire extinguisher and acknowledged that Plaintiff was having difficulty breathing. However, rather than obtaining medical treatment for Plaintiff, Defendant Williams cursed at him and taunted him about his inability to breathe.

However, Plaintiff does not make any plausible claim that Defendant Mobley or Defendant Hill was personally involved in the denial of his medical care or that either can be otherwise connected to the denial of medical care. Plaintiff's statement of claim does not allege that Defendant Mobley was even present at Plaintiff's cell during the use of the fire extinguisher or thereafter. (Doc. 1, pp. 6–7.) While Unit Manager Chambers relayed information from Defendant Mobley regarding Plaintiff and his roommate being fed, this discussion included nothing about the use of the fire extinguisher or any other information that indicates that Defendant Mobley was aware of Plaintiff's need for medical treatment. (Id. at p. 7.) Likewise, while Defendant Hill was present at the use of the fire extinguisher, Plaintiff does not allege that he was even in the area after the incident, much less that he knew that Plaintiff was having

difficulty breathing as a result of the incident. Id. Consequently, Plaintiff has not set forth any facts to plausibly allege that Defendant Mobley or Hill knew of or disregarded any serious medical need.

**B.      Deliberate Indifference to Risk to Health and Safety**

The Eighth Amendment requires prison officials to take reasonable measures to ensure the safety of inmates. Farmer, 511 U.S. at 828. This right to safety is violated when prison officials show a deliberate indifference to a substantial risk of serious harm. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing Farmer, 511 U.S. at 828). As in the deliberate indifference to medical care context, in order to prevail on such a claim, the plaintiff must establish the following: (1) there was a substantial risk of serious harm to him; (2) defendant showed a deliberate indifference to this risk; and (3) there is a causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. Id.

"To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313, 1319–20 (11th Cir. 2005)). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010). In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of

serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010).

Plaintiff has alleged sufficient facts that Defendant Williams knew of and disregarded a risk of serious harm to Plaintiff by keeping Plaintiff in his cell for hours after the use of the fire extinguisher. See Santos v. New York City Dep't of Corr., No. 08CIV8790GBDTHK, 2010 WL 1142066, at *4 (S.D.N.Y. Feb. 25, 2010), report and recommendation adopted, No. 08CV8790GBDTHK, 2010 WL 1142065 (S.D.N.Y. Mar. 25, 2010) (denying motion to dismiss on claim that officer was deliberately indifferent to a serious risk of harm when she exposed plaintiff to a high-pressure stream of chemicals from a fire extinguisher). Again, according to Plaintiff, Defendant Williams was present for the use of the fire extinguisher and constantly taunted Plaintiff and his roommate about their inability to breathe as they remained in the same cell for hours.

In contrast, Plaintiff has not alleged that Defendant Mobley or Defendant Hill knew that Plaintiff stayed in his cell after the incident much less that Plaintiff faced a serious threat to his health and safety by doing so. Again, Plaintiff does not allege that Defendant Mobley was present at his cell during the use of the fire extinguisher or afterwards. While Hill was present for the use of the fire extinguisher, Plaintiff does not allege that this Defendant remained in the area or that he otherwise knew that Plaintiff remained in his cell and had breathing problems. Thus, Plaintiff cannot sustain a claim against Mobley or Hill for deliberate indifference to Plaintiff's health and safety. Farmer, 511 U.S. at 828 (in order to be liable under the Eighth Amendment, a prison official must know that the inmate faces a substantial risk of serious harm and then disregard that risk).

**CONCLUSION**

For all of the above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against the Georgia Department of Corrections, Captain Mobley, and Officer Hill. Additionally, the Court should **DISMISS** Plaintiff's official capacity claims, supervisory liability claims, and his claims for excessive use of force.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

**REMAINING CLAIMS AND DEFENDANT**

Plaintiff's allegations in his Complaint arguably state colorable claims that Defendant C. Williams disregarded Plaintiff's serious medical needs and disregarded a substantial risk to Plaintiff's health and safety under 42 U.S.C. § 1983 and the Eighth Amendment. Consequently, the United States Marshal shall serve a copy of Plaintiff's Complaint and a copy of this Order upon Defendant Williams without prepayment of cost. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

**INSTRUCTIONS TO DEFENDANT**

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendant is hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendant is further advised that the Court's standard 140 day discovery period will commence upon the filing of the

last answer.  Local Rule 26.1.  Defendant shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendant takes the deposition of any other person, Defendant is ordered to comply with the requirements of Federal Rule of Civil Procedure 30.  As the Plaintiff will likely not be in attendance for such a deposition, Defendant shall notify Plaintiff of the deposition and advise him that he may serve on Defendant, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any.  Defendant shall present such questions to the witness seriatim during the deposition.  Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendant or, if appearance has been entered by counsel, upon his attorney, a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendant or his counsel.  Fed. R. Civ. P. 5.  "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."  Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action.  Local Rule 11.1.  Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to obtain facts and information about the case from Defendant, Plaintiff must initiate discovery.

See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as a Defendant. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the**

**collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendant. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's

motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendant's affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of January, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA