# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

LAYTON LESTER,

    Plaintiff,

v.

OFFICER C. WILLIAMS,

    Defendant.

CIVIL ACTION NO.: 6:15-cv-110

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Georgia State Prison in Reidsville, Georgia, filed a 42 U.S.C. § 1983 action, contesting certain conditions of his confinement. (Doc. 1.) On September 12, 2016, Defendant Officer Curmit Williams ("Defendant") filed a Motion for Summary Judgment. (Doc. 18.) The Clerk of Court mailed a Notice to Plaintiff advising him that Defendant filed a Motion for Summary Judgment and that a response must be filed by October 6, 2016. (Doc. 19.) That Notice further advised Plaintiff that:

> 1. If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.
>
> 2. If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.
>
> 3. If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

(Id.) Plaintiff filed no Response to Defendant's Motion for Summary Judgment, and the Court received no indication this Notice or Defendant's Motion was undeliverable. However, "the

district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Based on the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendant's unopposed Motion for Summary Judgment, **DISMISS** Plaintiff's Complaint **WITH PREJUDICE**, and **DIRECT** the Clerk of Court to **CLOSE** this case. In addition, I **RECOMMEND** the Court **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

## BACKGROUND[1]

Plaintiff alleges that Defendant, a correctional officer at Georgia State Prison, was deliberately indifferent to his safety and serious medical needs on July 8, 2015.[2] (Doc. 1.) Prior to this alleged incident of deliberate indifference, Plaintiff was being disruptive because prison staff had not addressed an ant infestation in his cell. (Doc. 18-1, p. 1.) Specifically, Plaintiff threw feces at officers, prevented officers from closing his tray flap, and tried to snatch an officer's pepper spray. (Doc. 18-1, p. 1.) During this outburst, another commotion arose in the dormitory, and officers again failed to address Plaintiff's request for pest control. Additionally, another officer informed Plaintiff that he and his cellmate would have to wait to receive their

---

[1] The recited allegations are taken from Plaintiff's Complaint and Defendant's Statement of Material Facts. However, given that Plaintiff has not responded to Defendant's Motion for Summary Judgment, including Defendant's Statement of Facts, the Court need not accept Plaintiff's allegations as true.

[2] Although Plaintiff alleges the incident occurred on July 9, 2015, the incident report reflects that the incident occurred on July 8, 2015. (Doc. 18-6.)

lunch. (Id.) Plaintiff told the officer that he and his roommate would "tear up the cell" if they did not receive their lunch.

When Plaintiff's cellmate did not receive a food tray, Plaintiff and his cellmate "tore their cell up"[3] and started a fire inside the cell between 5:00 p.m. and 5:25 p.m. (Id.) After discovering Plaintiff had set his cell on fire, an officer threw water under the door to extinguish the flames. (Id. at p. 2.) When the fire continued to burn, another officer sprayed a fire extinguisher toward the cell. Plaintiff and his cellmate then ran to the back of the cell to an open window, which allowed for ventilation of the smoke fumes. (Id.) Defendant approached Plaintiff's cell approximately 15 to 20 minutes later.[4] (Id.) At approximately 5:30 p.m., Plaintiff was moved to a strip cell and detained there until 1:30 a.m. the next morning. (Id. at p. 1.)

Plaintiff alleges he experienced sneezing, headaches, and shortness of breath following his exposure to fire extinguisher fumes.[5] Plaintiff contends he was denied medical attention immediately after officers sprayed his cell with a fire extinguisher and following his transfer to the strip cell. (Doc. 1, p. 7.) Plaintiff eventually received treatment on July 20, 2015, when he complained of headaches and a congested nose. (Doc. 18-1, p. 3.) Medical personnel diagnosed Plaintiff with recurring allergic rhinitis and sinusitis and prescribed Zyrtec and nasal spray. (Id.) Plaintiff continued to seek medical attention for similar issues until May 24, 2016. (Id. at pp. 3–4.) However, Plaintiff no longer seeks treatment for his breathing issues. (Id.)

---

[3] According to Plaintiff's deposition testimony, the inmates ripped their bed frames and mattresses apart. (Doc. 18-7, p. 10.)

[4] Plaintiff contends Defendant was "constantly coming to the cell door opening the top flap window stating 'now look at your stupid ass can't even breath [sic],' 'dumb muthafucker [sic],' and laughing." (Doc. 1, p. 7.) Defendant, however, contends he "never laughed at or taunted [Plaintiff] for being unable to breathe." (Doc. 18-5, p. 4.)

[5] To be clear, Plaintiff does not allege that he suffered any injury due to smoke inhalation or from exposure to the fire he started in his cell. Instead, Plaintiff claims his injuries occurred because officers sprayed his cell with a fire extinguisher. (Doc. 1, pp. 6–7; Doc. 18-7, p. 12.)

3

**DISCUSSION**

Defendant asserts that Plaintiff has not presented sufficient evidence to sustain his Eighth Amendment claims. (Doc. 18-2, p. 7.) Additionally, Defendant maintains Plaintiff's claims for monetary damages are barred by the Prison Litigation Reform Act because Plaintiff did not suffer any more than a *de minimis* injury as a result of Defendant's actions. (Id. at p 11.) Defendant also asserts he is entitled to qualified immunity. (Id. at p. 12.) In moving for summary judgment, Defendant relies on his Statement of Material Facts, a copy of the transcript from Plaintiff's deposition, Plaintiff's medical records, an incident report, and two declarations sworn under penalty of perjury.

As set forth below, the undersigned agrees that Plaintiff fails to establish a genuine dispute of material fact as to his claims, and Defendant's Motion is due to be granted as a result.

**I.   Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party

must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.     Deliberate Indifference to Safety Claim

Plaintiff's deliberate indifference to safety claims give rise to discussion of the Eighth Amendment's proscription against cruel and unusual punishment, which imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. "'To show a violation of [his] Eighth Amendment rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (quoting Purcell ex rel. Estate of Morgan v. Toombs Cty., 400 F.3d 1313, 1319 (11th Cir. 2005)). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell, 400 F.3d at 1319–20). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form

5

through its application to facts. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith, 368 F. App'x at 14. In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010). A prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

Like any deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective inquiry. Chandler v. Crosby, 379 F.3d 1278, 1289–90 (11th Cir. 2004). Under the objective component, a plaintiff must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Miller v. King, 384 F.3d 1248, 1260–61 (11th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. at 837). To prove deliberate indifference, the prisoner must show that the prison official "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition at issue. Id. (quoting Chandler, 379 F.3d at 1289–90).

Defendant first asserts Plaintiff has not produced sufficient evidence to prove his exposure to fire extinguisher fumes created a substantial risk of serious harm. (Doc. 18-2, p. 10–11.) Next, Defendant asserts he did not know of or disregard any risk of serious harm to Plaintiff. Specifically, Defendant avers the fumes in Plaintiff's cell were clear when he returned to the cell after the fire was extinguished and that Plaintiff did not complain about the fire

extinguisher fumes or appear to have any difficulty breathing. (Id. at p. 11.) Defendant further argues that Plaintiff fails to show his medical condition is causally connected to any exposure to fire extinguisher fumes. Specifically, Defendant avers Plaintiff's respiratory condition pre-dated his exposure to fire extinguisher fumes and that his condition did not worsen following the exposure. Finally, Defendant maintains Plaintiff's injuries were *de minimis*. (Id.)

The undisputed evidence before the Court shows that Plaintiff did not face a substantial risk of serious harm as a result of being exposed to fire extinguisher fumes inside his cell. As an initial matter, the record evidence establishes prison staff <u>eliminated</u> any immediate threat to Plaintiff's safety by spraying his cell with a fire extinguisher, as Plaintiff had set his cell on fire. (Doc. 18-5, p. 3.) Furthermore, Plaintiff presents no evidence that the concentration of fire extinguisher fumes or the amount of time he was exposed to those fumes was unsafe. To the contrary, the evidence of record shows that Plaintiff had no difficulty breathing, and he suffered no adverse reaction to fumes while confined to his cell. For example, instead of requesting medical attention after prison staff sprayed his cell, Plaintiff complained to officers that his cellmate did not receive a food tray. (Doc. 18-7, p. 12.) Furthermore, when Defendant approached Plaintiff's cell after the fire was extinguished, Plaintiff asked Defendant "what's up, what you want," instead of expressing any concern for his safety or indicating that he could not breathe. Accordingly, Plaintiff's behavior following his exposure to fire extinguisher fumes shows that he did not face any substantial risk of serious harm, much less one of which Defendant could have been aware. Moreover, even assuming Plaintiff had a serious medical need and defendant deliberately ignored that need, there is no evidence that Plaintiff's injuries were caused by Defendant's actions

Consequently, because Plaintiff has failed to present evidence creating any genuine dispute of material fact as to whether he objectively faced a substantial risk of serious harm, he cannot sustain this claim against Defendant.[6]

## III. Deliberate Indifference to Medical Needs Claim

Plaintiff's claims relating to his respiratory complications and the treatment therefor also give rise to a discussion of the Eighth Amendment. The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. This duty to safeguard also embodies the principle expressed by the Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), forbidding prison officials from demonstrating deliberate indifference to the serious medical needs of inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

To prevail on a deliberate indifference claim, a prisoner must demonstrate "(1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the

---

[6] Because no genuine dispute of material fact exists as to the objective prong of Plaintiff's deliberate indifference claim, it is unnecessary to fully address the parties' contentions regarding the subjective prong and the causation element of Plaintiff's claim. However, Plaintiff fails to meet those elements as well.

necessity for a doctor's attention.'" Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

"The meaning of 'more than gross negligence' is not self-evident[.]" Id. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Cty. Det. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

Defendant argues that Plaintiff did not have an objectively seriously medical need because "he never passed out from exposure to the fire extinguisher," "only experienced sneezing, headaches, and shortness of breath," and did not complain about any medical issues when the fire extinguisher fumes abated. (Doc. 18-2, p. 7.) Defendant further argues that, to the extent Plaintiff was injured at all, these injuries were *de minimis*. As to whether Defendant exhibited deliberate indifference, Defendant avers he had no knowledge of any injury to Plaintiff because he "never heard Plaintiff complain about smoke or the fire extinguisher and never saw

9

or heard anything indicating he could not breathe." (Id. at p. 9.) To the extent Defendant was aware of any medical need, Defendant maintains he "never laughed at or taunted Plaintiff for being unable to breathe" and, therefore, did not deliberately disregard Plaintiff's medical needs.[7] (Id.) Finally, Defendant argues that, "even assuming that Plaintiff could show an objectively serious medical need and deliberate indifference to such a need by [Defendant]", Plaintiff has failed to present evidence as to causation. Specifically, Defendant contends "the undisputed evidence shows that any symptoms Plaintiff experienced [following his exposure to fire extinguisher fumes] were caused by his pre-existing allergic rhinitis[.]" (Id.)

Plaintiff has submitted no evidence supporting his claim that he had a serious medical need. However, Plaintiff testified during his deposition that he and his cellmate stood at the back of the cell near an open window to breathe immediately after officers released fire extinguisher fumes into his cell.[8] (Doc. 18-7, p. 12.) Shortly thereafter, Plaintiff flagged down another officer and complained that the cell had been sprayed with a fire extinguisher and that his cellmate had not received his food. (Id. at p. 11.) When Defendant came by his cell approximately 15 to 20 minutes later, Plaintiff asked Defendant "what's up, what you want." (Id.) Defendant testified that "he never observed that [Plaintiff] could not breathe or had any other serious medical need." (Doc. 18-5, p. 4.)

Even construing these facts in the light most favorable to Plaintiff, the nonmoving party, Plaintiff has not shown that he had a serious medical need following his exposure to fire

---

[7] Plaintiff testified in his deposition that Defendant "kept constantly coming back to the window laughing talking about look at this dumb motherfucker, now you can't breathe[.]" (Doc. 18-7, p. 12.) Defendant, however, contends he "never laughed at or taunted [Plaintiff] for being unable to breathe." (Doc. 18-5, p. 4.) As discussed herein, the Court need not reach the issue of whether Plaintiff has created a genuine dispute of material fact as to the subjective component of his claim with this statement he attributes to Defendant because the Plaintiff failed to create a genuine dispute as to the objective component.

[8] However, Plaintiff does not indicate whether his difficulty breathing was attributable to smoke or to fire extinguisher fumes.

extinguisher fumes. Despite Plaintiff's claims he had to run to the back of his cell to breathe, his deposition testimony reveals that he was able to speak to officers who walked by and felt well enough to complain that his cellmate had not received a food tray. In addition, Plaintiff testified that the open window in his cell allowed for ventilation. (Doc. 18-7, p. 11.) Moreover, as opposed to requesting medical attention when Defendant approached his cell, Plaintiff asked Defendant "what's up, what you want."

Based upon this evidence, Plaintiff was not only able to breathe after his exposure to fire extinguisher fumes, but he was capable of carrying on conversations with multiple officers and demanding that he and his cellmate receive lunch. Moreover, Defendant declared in his Affidavit that Plaintiff "was not taken to medical because he had no complaints of injuries" following his exposure to fire extinguisher fumes. (Doc. 18-5, p. 4.) Corroborating Defendant's declaration, Plaintiff averred during his deposition that he first requested medical attention later that night when he drafted grievances regarding the incident. (Doc. 18-7, p. 14.) Therefore, the evidence of record, including Plaintiff's deposition testimony, contradicts Plaintiff's allegation that he could not breathe following his exposure to fire extinguisher fumes or that he had any other serious medical need.[9] Accordingly, Plaintiff fails to create a genuine dispute as to any material fact regarding the first element of his deliberate indifference claim.[10] As a result, Plaintiff cannot sustain this claim against Defendant. Therefore, the Court should **GRANT** summary judgment in favor of Defendant and **DISMISS** Plaintiff's Eighth Amendment claims.

It is unnecessary to address the remaining grounds of Defendant's Motion.

---

[9] In addition, Dr. Dean Broome, a medical doctor at Georgia State Prison, stated in his Affidavit that Plaintiff did "not suffer[] any injury as a result of being in his cell when a fire extinguisher was sprayed outside the cell door." (Doc. 18-3, p. 3.)

[10] Even if Plaintiff had established that he had a serious medical need, he does not establish that Defendant was aware of that need, that Defendant exhibited deliberate indifference to that need, or that Defendant's deliberate indifference caused Plaintiff any injury.

### III.   Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[11]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]") (italics supplied).  An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant's Motion for Summary Judgment, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

---

[11]  A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action.  See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendant's unopposed Motion for Summary Judgment. (Doc. 18.) I also **RECOMMEND** that the Court **DISMISS** Plaintiff's Complaint **WITH PREJUDICE**, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO REPORTED** and **RECOMMENDED**, this 17th day of August, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA